## CAMDEN v. HARRIS.
### Civ. No. 1050.

United States District Court
W. D. Arkansas, Fort Smith Division.
Jan. 12, 1953.

Orion E. Gates, Little Rock, Ark., for plaintiff.

Pryor, Pryor & Dobbs, Fort Smith, Ark., for defendant.

JOHN E. MIILLER, District Judge.

The question before the Court arises out of a motion to dismiss filed by the defend-ant. The controlling facts as shown by the complaint and the amendment thereto filed by the plaintiff in the Sebastian Circuit Court, Greenwood District, are as follows:

The plaintiff is a citizen and resident of the State of Arkansas and the defendant is and was at all times material herein a citizen and resident of the State of Oklahoma, and at the time of the alleged injury to plaintiff, both he and the defendant were members of the armed forces of the United States and were stationed at Camp Chaffee, Arkansas.

The plaintiff alleged that on the 11th day of January, 1952, at or about 12:30 in the morning, he was sitting on the right front seat of a Ford automobile owned and operated by the defendant who was driving the same on the Camp Chaffee, Arkansas military reservation travelling east on Fort Smith Boulevard when the said automobile that the defendant was then and there driving left the road at the crest of a curve near the Finance Building; that prior to the time the automobile reached the crest of the curve the defendant was driving at a highly careless and reckless rate of speed and that the plaintiff and two other passengers in the car had remonstrated and implored the defendant to slow down or to permit them to leave the car; that immediately after leaving the crest of the curve the automobile knocked down a speed limit sign and crashed into a culvert; that the said defendant was guilty of gross and wilful and wanton negligence in the operation of said automobile in total disregard of the rights of others, and that as a result of the said accident and the gross, wilful, wanton and negligent acts of the defendant, the plaintiff received serious personal injuries for which he prays judgment against the defendant for a sum in excess of $3,000, exclusive of interest and costs.

Summons was issued by the Clerk of the State Court on October 14, 1952, directed to the Sheriff of Pulaski County, and on November 18, 1952, the summons was duly served on Honorable C. G. Hall, Secretary of the State of Arkansas, in accordance with Act 199 of the General Assembly of the State of Arkansas for the year 1949, and now appearing as Section 27–342.1,

Arkansas Statutes 1947, Annotated (1951 Supp.). The statute provides:

" * * * the acceptance by a nonresident owner * * * or operator, of any motor vehicle * * * of the rights and privileges conferred by the laws of the State of Arkansas to drive or operate * * * a motor vehicle upon the public highway of said State as evidenced by his * * * operation * * * of a motor vehicle * * * on such highway in the State of Arkansas shall be deemed equivalent to the appointment by such nonresident owner (or) * * * operator * * * of the Secretary of the State of Arkansas * * * to be the true and lawful attorney and agent of such nonresident owner, or nonresident operator * * * upon whom may be served all lawful process in any action or proceedings against him * * * growing out of any accident or collision in which said nonresident owner, or nonresident operator * * * may be involved while operating a motor vehicle on such highway * * * ."

The case was removed by defendant from the State Court on the grounds of diversity of citizenship and the amount involved, and on December 31, 1952, the motion to dismiss was filed. In said motion it is alleged:

"1. That the complaint alleges that the plaintiff was injured in an accident occurring 'on Camp Chaffee, Arkansas, Military Reservation'. That in truth and in fact the accident alleged in the complaint did occur on Camp Chaffee Military Reservation, and did not occur upon any of the highways of the State of Arkansas, but occurred upon a road built, maintained and under the exclusive jurisdiction and control of the United States Army. That said road is not, does not, and never has constituted part of the highways of the State of Arkansas, but the same is the private property of the United States Government.

"2. That service is attempted to be had upon this defendant by service upon the Secretary of State. Under the provisions of Section 27–341 Statutes of Arkansas, 1947 and said act is by its term applicable only to accident occurring on highways of the State of Arkansas. Said act provides that such service may be had in cases, 'growing out of any accident or collision in which the said nonresident owner or any agent, servant or employee of any such nonresident owner may be operating a motor vehicle *on such highways.*'

"That by reason of such purported and attempted service the State Court did not acquire jurisdiction, and this court does not have jurisdiction of the person of this defendant."

It is admitted, and the complaint so alleges, that the accident occurred on a road in the Camp Chaffee Military Reservation. That the road or street on the reservation and in the camp was designated by the military authorities as the Fort Smith Boulevard. While it is not alleged in the complaint, it is admitted that all the land within the Reservation is owned by the United States Government and all buildings, roads and other improvements on the Reservation were constructed and are owned and under the control of the Department of the Army. Entrance to the Reservation and particularly to the immediate camp area where the accident occurred, is through gates where guards are stationed at all times and where anyone desiring to enter the camp area must stop and obtain permission to drive in the area.

It is also shown by the complaint that the plaintiff and the defendant were both members of the armed forces and were stationed at Camp Chaffee. As such members of the armed forces, they, along with all other soldiers stationed at the camp, were permitted to drive their automobiles on the streets and roads on the Reservation, except in certain areas when the trainees were engaged in training or target practice, and in those areas no vehicular traffic was allowed.

Ordinarily civilians are permitted to enter the camp area and to drive their automobiles thereon while visiting someone stationed at the camp, and also tradesmen and persons employed on the Reservation or in the camp are permitted to enter by the guards at the gates, but at no time does anyone have an unrestricted right to use the roads on the Reservation.

The plaintiff in his brief in opposition to the motion to dismiss states:

"He rode in defendant's automobile from Fort Smith, Arkansas, to Camp Chaffee, Arkansas. The journey was a continuous one. From one point to another. From a place of departure to a place of arrival. The destination being Camp Chaffee. Camden did not reach his destination, but was injured on the way. Injured about 1800 feet west of the junction of Fort Smith Boulevard and Warehouse Street at Camp Chaffee, Arkansas. Camp Chaffee is not exclusively restricted to the use and purposes of a military reservation."

He therefore contends that the Arkansas Legislature did not intend by the passage of the statute hereinbefore quoted: "for any nonresident owner or operator of an automobile to injure a resident of the State of Arkansas, leave the Arkansas jurisdiction and not be subject to the service of process except in some foreign state. The legislation was social and remedial, intended for the protection of its citizens or anyone else residing within the borders of the state."

Arkansas by the enactment of Section 10–1101, Arkansas Statutes 1947, Annotated, ceded all jurisdiction over the area included in the Camp Chaffee Reservation to the United States Government, reserving only the right to serve process of the State, civil or criminal, upon any person who may be on the Reservation.

In Section 75–1102, subd. C, which is a portion of the Motor Fuel Tax Law, public highways are defined as follows:

"The term 'public highways' shall mean and include every way or place of whatever nature, generally open to the use of the public as a matter of right, for the purposes of vehicular travel, and notwithstanding that the same may be temporarily closed for the purpose of construction, reconstruction, maintenance or repair."

The identical provision also appears in Section 75–1201(c).

In Kerr, Administrator v. Greenstein, 213 Ark. 447, at page 450, 212 S.W.2d 1, at page 3, the Court said:

"At the outset, we state that our statute is to be strictly construed, because it is in derogation of common law. In Brown v. Cleveland Tractor Co., 265 Mich. 475, 251 N.W. 557, and, again, in Flynn v. Kramer, 271 Mich. 500, 261 N.W. 77, 78, the Supreme Court of Michigan, in discussing the Michigan non-resident motorist service statute, said: 'The statute is in derogation of common right, must be strictly construed, and cannot be extended by implication to include persons not coming within its terms.'

"In Jermaine v. Graf, 225 Iowa 1063, 283 N.W. 428, 430, the Supreme Court of Iowa, in discussing the Iowa nonresident motorist service statute, said: 'In several jurisdictions it has been held that statutes, of the nature of these we are discussing, are in derogation of the common law and must be construed strictly, and may not be extended by implication to non-residents not coming within their terms. Brown v. Cleveland Tractor Co., 265 Mich. 475, 251 N.W. 557; Morrow v. Asher, D.C., 55 F.2d 365; Day v. Bush, 18 La.App. 682, 139 So. 42.' "

At the time the decision in Kerr, Administrator v. Greenstein, supra, was rendered, the nonresident motorist service statute provided for substituted service of summons only on "nonresident owners" and not on "nonresident operators." The defendant was a nonresident and at the time of the accident was driving an automobile owned by a resident of Arkansas. The defendant did not own or have any interest in the automobile, but was merely driving the car of a resident owner. Service of summons was made in accordance with the

statute then in force and there was a motion to quash the service and to dismiss the complaint of the plaintiff. The trial court held the service to be insufficient and sustained the appellees motion to quash. The Supreme Court affirmed the judgment of the lower court and in doing so said:

"Since appellee was merely a nonresident operator, and not a nonresident owner, it follows that the circuit court was correct in sustaining the motion to quash." 213 Ark. 456, 212 S.W.2d 6.

■ In the instant case the complaint alleges that the accident happened on a road or street in the Camp area on the Camp Chaffee Military Reservation. The nonresident motorist service statute provides for service of summons on the Secretary of State only in an action or proceeding growing out of any accident or collision while operating a motor vehicle on the public highways of the State. This Court is bound by the provisions of the statute and cannot extend its terms by construction to include an accident or collision occurring at a place not on a public highway of the State. The only statutory definition in Arkansas of a "public highway" is that the term, "shall mean and include every way or place of whatever nature, generally open to the use of the public *as a matter of right* for the purpose of vehicular travel * * *"

This definition was a part of the law of Arkansas at the time the present nonresident motorist service statute was enacted and the Legislature evidently intended to provide for substituted service only in cases arising upon a public highway.

The above statutory definition is not contrary to Section 75–664, Arkansas Statutes 1947, Annotated. That section does not attempt to define what a public highway is, but does state:

"Public highways shall include any highway, county road, State road, public street, avenue, alley, park, parkway, driveway, or any other public road or public place in any county, city or village, incorporated town or towns."

The plaintiff urges that because this accident occurred on a street or roadway within the State of Arkansas the nonresident motorist service statute applies, but the statute relied upon does not change in any manner the statutory definition of a public highway, because all the places enumerated in Section 75–664 are places that the public in general has an unrestricted right to use.

The identical question was before the 5th Circuit Court of Appeals in the case of O'Sullivan v. Brown, 171 F.2d 199, 200. In that case the accident occurred on Grant Lane, a roadway running through a tract of 435 acres owned by the United States Government and occupied by the Consolidated Vultee Aircraft Corporation of Fort Worth, Texas. The area was entirely under fence with ingress and egress through constantly guarded gates. The plaintiffs were employees of the Aircraft Corporation and their automobile collided with an automobile owned and driven by the appellant, O'Sullivan. The Texas nonresident motorist service statute provides that a summons may be served upon the Chairman of the State Highway Commission in any civil action or proceeding instituted against a nonresident, "growing out of any accident or collision in which said non-resident * * * may be involved while operating a motor vehicle or motorcycle on such public highway or public street".

The Court in disposing of the question 171 F.2d at page 202 said:

"While we are of the opinion that the Texas nonresident motorist statute should be construed liberally and consistently with the act's purpose, we find ourselves unable to agree with the court below that Grant Lane was a public highway or street within the contemplation of that statute. As pointed out, the facts of this case do not bring Grant Lane within the definition of a public highway as found in any statutes passed by the legislature of Texas to which we have been referred or which, after diligent research, we have been able to find; nor does it fall within the definition of a highway or street as de-

fined generally by the courts, including those of Texas."

The plaintiff has cited the cases of Galloway v. Wyatt Metal and Boiler Works, 189 La. 837, 181 So. 187, and Gatewood v. Continental General Life Ins. Co. of Hartford, Conn., D.C.E.D.Va., 23 F.2d 211, in support of his contention, but neither of those cases have any application to the question before the Court. The question here has to do with service of process and not with a right of action, and it is not necessary for the Court to determine whether the plaintiff has a cause of action under the law of Arkansas, which would govern in determining such a question. 16 U.S. C.A. § 457.

The service of summons on the defendant is not a valid service since the accident did not happen on a public highway of the State of Arkansas, and therefore, the motion to quash service of summons and to dismiss the complaint should be sustained, and an order in accordance herewith is being entered today.